IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| VS. § | |
| § | |
| JAMAL TYREA ALLEN § | CRIMINAL NO.  H 4:18cr408 |
| JOHN RILEY STUBBLEFIELD § | |
| AND § | |
| DAVID NELSON, JR. § | |
| DEFENDANTS § | |

JOHN RILEY STUBBLEFIELD'S
MOTION TO DISMISS INDICTMENT

 

**Schneider & McKinney, P.C.**

**Tom Moran**
**Texas Bar No. 14422200**
**440 Louisiana, Suite 800**
**Houston, Texas 77002**
**(713) 951-9994**
**Telecopier:  (713) 224-6008**
**E-mail:  tom6294@aol.com**

**Attorney for Defendant**
**JOHN RILEY STUBBLEFIELD**

**TABLE OF CONTENTS**

I.  SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  STATEMENT OF RELEVANT FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.  ARGUMENTS AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    A.  Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    B.  The Statute . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    C.  The Reach of the Commerce Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    D.  Improper Interference With State Sovereign Matters . . . . . . . . . . . . . . . 7
    E.  Applying These Principles to the Instant Case . . . . . . . . . . . . . . . . . . . 11
        1.  Robberies of Retail Stores . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        2.  Ordinary Armed Robberies Do *Not* Come Within
            the Third *Lopez* Category . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    F.  Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# INDEX OF AUTHORITIES

## Cases

*Alderman v. United States,* 562 U.S. 1163 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*National Federation of Independent Business v. Sebelius,*   U.S.   , 132 S. Ct. 2566 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Shelby County v. Holder,*   U.S.   , 133 S. Ct. 2612 (2013) . . . . . . . . . . . . . . . 7, 8

*United States v. Hickman,* 179 F.3d 230 (5th Cir. 1999) (*en banc*), *cert. denied,* 530 U.S. 1203 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 13

*United States v. Lopez,* 514 U.S. 549 (1995) . . . . . . . . . . . . . . . . . . . . 4, 5, 9-11, 13

*United States v. McFarland,* 311 F.3d 376 (5th Cir. 2002) (*en banc*), *cert. denied,* 538 U.S. 962 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 6, 12, 13

*United States v. Mills,* 122 F.3d 235 (5th Cir. 1997), *cert. denied,* 523 U.S. 1011 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Morrison,* 529 U.S. 598 (2000) . . . . . . . . . . . . . . . . . . . . . 8-11, 13

## Statutes and Rules

18 U.S.C. § 1951 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 11, 13

18 U.S.C. § 1951(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 1951(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

U.S. CONST. amend. X . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

U.S. CONST. amend. XV, § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

U.S. CONST, art. I, § 8, cl. 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 7-13

**TO THE HON. KEITH P. ELLISON, UNITED STATES DISTRICT JUDGE:**

**COMES NOW JOHN RILEY STUBBLEFIELD,** Defendant herein, by and through his attorney, **TOM MORAN,** and moves the Court to dismiss the indictment in the instant case and would show the Court as follows:

### I. SUMMARY OF THE ARGUMENT

Stubblefield asserts the Hobbs Act, 18 U.S.C. § 1951, does not extend to what essentially are plain vanilla aggravated robberies under Texas law or alternatively, criminalizing ordinary store robberies exceeds Congress' power under the Commerce Clause.

In effect, the interpretation of the Hobbs Act allowing prosecution under this indictment allows the federal government to usurp the traditional state power to punish street crime and exceeds Congress' Commerce Clause powers.

### II. STATEMENT OF RELEVANT FACTS

Stubblefield is charged with conspiracy to violate the Hobbs Act in relation to the aggravated robbery of a cell phone store in Harris County and a gun count for brandishing a weapon in that robbery.

### III. ARGUMENTS AND AUTHORITIES

#### A. Introduction

1

Defendant recognizes that the current Fifth Circuit precedent is adverse to the position he takes in this motion. However, the *en banc* Fifth Circuit has twice tied on the issues he raises herein. Therefore, he is filing this motion to preserve his right to seek further review either by the *en banc* Fifth Circuit or the Supreme Court.

In *United States v. McFarland,* 311 F.3d 376 (5th Cir. 2002) (*en banc*), *cert. denied,* 538 U.S. 962 (2003); and *United States v. Hickman,* 179 F.3d 230 (5th Cir. 1999) (*en banc*), *cert. denied,* 530 U.S. 1203 (2000), the evenly-divided *en banc* Fifth Circuit affirmed Hobbs Act convictions based on facts similar to the charges in the instant case.[1] For purposes of this motion, Defendant adopts as parts of his arguments the dissenting opinions in *McFarland* and *Hickman.*

### B. The Statute

The Hobbs Act reads in relevant part:

> Whoever in any way or degree obstructs, delays or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts to or conspires to do so, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years or both.

18 U.S.C. § 1951(a).

---

[1] Defendant adopts as part of his arguments Judge Higginbotham's opinion in *Hickman* and the opinions by Judges Higginbotham, Garwood and Jones in *McFarland* as the basis of his argument.

Congress defined "commerce" for purposes of the Hobbs Act as:

> The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory or Possession, or the District of Columbia and any point outside thereof; all commerce within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

18 U.S.C. § 1951(b)(3).

The indictment in the instant case charges a routine robbery of a cell phone store and the taking of property which either is meant to be sold at retail or the fruits of retail sales. Therefore, if the Hobbs Act applies at all, the nexus to commerce must be the final clause of § 1951(b)(3), a catchall provision applying the definition of commerce to all other commerce over which the United States has jurisdiction.

The issue presented here is whether the United States has Commerce Clause jurisdiction over property which may once have moved in interstate or international commerce but which at the time of the robbery is held for retail sale. Defendant asserts such an interpretation would exceed Congress' power under the Commerce Clause.

### C. The Reach of the Commerce Clause

Three decades ago, no reasonable constitutional law scholar would have thought there were any limits on Congress' power to regulate conduct under the

Commerce Clause, U.S. CONST, art. I, § 8, cl. 3. Virtually any conduct would have some effect on interstate or foreign commerce and be subject to Congress' Commerce Clause powers.

That all changed with *United States v. Lopez,* 514 U.S. 549 (1995). There, the Supreme Court affirmed the Fifth Circuit's holding that the federal gun free zone statute exceeded Congress' powers under the Commerce Clause. In *Lopez,* the Court limited Congress' power under the Commerce Clause to three areas: 1) the use of channels of interstate commerce; 2) the instrumentalities of interstate commerce; and 3) activities having a substantial relation to interstate commerce. *Alderman v. United States,* 562 U.S. 1163, 1164 (2011) (Thomas, J. dissenting from denial of certiorari),citing *Lopez*, 514 U.S., at 558-59.

*Lopez* and its progeny formed the basis for the dissents in *McFarland* and *Hickman.* Both of those cases, like the instant case, involved plain, vanilla robberies of stores, stores which admittedly sold goods which at some point had moved in interstate commerce. Traditionally, the power to punish such common crimes has resided in the states as part of their general police power, a power not vested in the federal government. The dissenters in both cases recognize that such robberies have no significant effect on interstate or foreign commerce.

As Judge Garwood wrote in his dissent in *McFarland,*

4

> To begin with, simply because a business is engaged to any extent in interstate commerce does not alone suffice to bring regulation of any and all conduct involving it within category two. That category applies to "instrumentalities of interstate commerce," such as "an aircraft" or a railroad line, and to "persons or things in interstate commerce," such as "thefts from interstate shipments." Plainly, a local retail store is not analogous to any of those. The Government's argument would vastly expand *Lopez's* category two, extending federal jurisdiction on a *per se*, categorical basis to a broad range of matters such as shoplifting of a candy bar from any business engaged in interstate commerce or children scuffling in any such business's parking lot, and would also blur the distinction between categories two and three.

311 F.3d, at 391 (footnote omitted).

Judge Garwood also rejected the argument that retail store robberies are activities having a substantial relation to commerce for purposes of the third *Lopez* power to regulate commerce. He wrote:

> *Lopez* and *Morrison* reflect that such a limitation on the aggregation principle is necessary because "the Constitution requires a distinction between what is truly national and what is truly local," and "the regulation and punishment of intrastate violence that is not directed at the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the States." Certainly, none of the instant robberies can be characterized as "directed at the instrumentalities, channels, or goods involved in interstate commerce." Further, the several decisions refusing to find the Hobbs Act applicable to most robberies of individuals under theories of deletion of assets and aggregation of the effect on interstate commerce of all such robberies likewise support our view in this respect. It has been said that this distinction is justified because "in general . . . businesses purchase on a larger scale than individuals. However, this justification is not persuasive because the here relevant portion of the Hobbs Act makes no distinction between the robberies it proscribes on the basis of whether the victim is a business (or is engaged in a commercial activity), and because virtually every consumer regularly expends considerable funds on the purchase of items originating out-of-state and there are many more consumers than businesses. Indeed, consumer spending is generally estimated to amount

5

to two-thirds of the national economy. ("since the aggregate effect of such robberies [of individuals] on commerce is non-trivial, those cases are in tension with the ones . . . which insist on aggregation"). Moreover, as previously noted, we are aware of no Supreme Court Commerce Clause decision applying the aggregation principle to a class of activities the contours of which are not reasonably inferable from the language of the challenged statute or regulation. Thus, the aggregation principle if applied to Hobbs Act prosecutions, would apply *all* robberies (of *any* personal property, from *any* victim, by any robber) which "in any way or degree . . . affects commerce.

*Id.,* at 397-98 (citations and footnotes omitted).

He concluded:

We turn to *Lopez* and *Morrison* for guidance, concluding that their relevance is not confined to cases where the statute lacks a jurisdictional element. Moreover, we conclude that the Hobbs Act's here relevant proscription of *any* robbery that "in any way or degree . . . affects commerce" does not constitute a regulation of commercial activity, notwithstanding that all robberies have *some* economic effect, and hence is within the scope of *Lopez* and *Morrison*. We further conclude that the instant robberies fall within *Lopez* category three, and for that reason they are within the Commerce Clause power only if they "substantially" affect interstate commerce. Individually considered, it is clear that none of them do. Nor is there any rational basis to for that purpose aggregate their respective effects on interstate commerce with the effect on interstate commerce of all the undifferentiated mass of robberies covered by the Hobbs Act's here relevant general proscription of any and all robberies which "in any way or degree . . . affect[] commerce." To allow such aggregation in *Lopez* category three cases would, without adequate justification, bring within the scope of the Commerce Clause the proscription of local violent (and other) crimes not constituting the regulation of commercial activity, crimes prototypical of those that historically have been within the reserved police power of the states, contrary to the principle that the Commerce Clause is limited to matters that are truly national rather than truly local.

*Id.,* at 409-10

### D. Improper Interference With State Sovereign Matters

In at least two recent non-Commerce Clause cases, the Supreme Court held Congress overstepped its power by interfering with powers and duties traditionally left to the states. In one of those cases, Congress had acted under a specific constitutional grant of authority and in the other it relied upon the Commerce Clause.

In *Shelby County v. Holder,* __ U.S. __, 133 S. Ct. 2612 (2013), the Court invalidated portions of the Voting Rights Act as an improper interference with state sovereignty even though Congress has the constitutional authority to enforce voting rights pursuant to U.S. CONST. amend. XV, § 2.[2]

Chief Justice Roberts, writing for the Court, said the Tenth Amendment, U.S. CONST. amend. X, reserves powers to the states, including the power to regulate elections, including generally broad powers to decide how the suffrage may be exercised and drawing lines for congressional districts. 133 S. Ct., at 2623. The Court held unconstitutional the formula set by Congress determining which jurisdictions would be subject to provisions of the Voting Rights Act requiring pre-clearance of changes in voting laws.

One of the key reasons for declaring the formula by which some states and political subdivisions were required to "preclear" changes in voting laws was the

---

[2]Section 1 of the Fifteenth Amendment guarantees citizens the right to vote without regard to race, color or previous condition of servitude. Section 2 provides: "The Congress shall have power to enforce this article by appropriate legislation."

7

Tenth Amendment and various constitutional provisions vesting states with the power to determine who has the right to vote and how it is to be exercised, to determine the qualifications of its officers and how they are chosen as well as the primary responsibility of the states to draw congressional districts. *Id.,* at 2623. In essence, the Court held that Congress' power to enforce the Fifteenth Amendment is appropriate only to the extent that it is based on facts showing to the Court's satisfaction the congressional act in fact is narrowly tailored to accomplish the amendment's purpose of preventing racial discrimination in voting.

In *National Federation of Independent Business v. Sebelius,* _ U.S. _, 132 S. Ct. 2566 (2012), the Court held unconstitutional a provision of the Affordable Care Act. It held that Congress lacked the power under the Commerce Clause to require the purchase of health insurance.

The Court first noted Congress' Commerce Clause powers included the right to regulate "those activities that substantially affect interstate commerce," 132 S. Ct., at 2578, citing *United States v. Morrison,* 529 U.S. 598, 609 (2000). In holding the requirement that individuals purchase health insurance exceeds Congress' Commerce Clause powers, the Court wrote:

> The Government says that health insurance and health care financing are "inherently integrated." But that does not mean the compelled purchase of the first is properly regarded as a regulation of the second. No matter how "inherently integrated" health insurance and health care consumption may be, they are not the same thing: They involve different transactions, entered into at different times, with different providers. And for most of those targeted by the mandate,

8

>significant health care needs will be years, or even decades, away. The proximity and degree of connection between the mandate and the subsequent commercial activity is too lacking to justify an exception of the sort urged by the Government. The individual mandate forces individuals into commerce precisely because they elected to refrain from commercial activity. Such a law cannot be sustained under a clause authorizing Congress to "regulate Commerce."

132 S. Ct., at 2591 (internal citations omitted).

This Court can take judicial notice that health care is a significant portion of the United States gross domestic product, approximately 18-20 percent, and that either taxpayers or those who pay for their own health care subsidize the cost of care for those who cannot pay for their own health care. Thus, if an uninsured person who cannot pay for his own medical care becomes seriously ill or is injured in an accident, the cost of his hospitalization and other care is paid by *someone* either through tax funds or in higher costs charged to those who can pay. The latter in turn increases the costs paid by health insurance carriers and causes increases in health insurance premiums which has a substantial cumulative effective on interstate commerce.

If Congress lacks the Commerce Clause power to regulate individual conduct which effects a fifth of the nation's economy, it cannot have the power to regulate criminal conduct aimed at local retail stores.

In *Morrison,* the Court cited *Lopez,* 514 U.S. at, 559-60,[3] for the proposition

---

[3] "[W]e have upheld a wide variety of congressional Acts regulating intrastate economic activity where we have concluded that the activity substantially affected interstate commerce. Examples include the regulation of intrastate coal mining; intrastate extortionate credit transactions, restaurants utilizing substantial interstate supplies, inns and hotels catering to interstate guests, and production and consumption

that Congress' Commerce Clause powers substantially affecting interstate commerce will be sustained. Otherwise, they are outside Congress' Commerce Clause power. 529 U.S., at 610. Most important for the instant case, the Court rejected congressional findings that gender motivated violence had a substantial cumulative effect on interstate commerce. *Id.,* at 615.[4] The Court wrote:

> The reasoning that petitioners advance seeks to follow the but-for causal chain from the initial occurrence of violent crime (the suppression of which has always been the prime object of the States' police power) to every attenuated effect upon interstate commerce. If accepted, petitioners' reasoning would allow Congress to regulate any crime as long as the nationwide, aggregated impact of that crime has substantial effects on employment, production, transit, or consumption. Indeed, if Congress may regulate gender-motivated violence, it would be able to regulate murder or any other type of violence since gender-motivated violence, as a subset of all violent crime, is certain to have lesser economic impacts than the larger class of which it is a part.

*Id.*

The bottom line in *Morrison* is that Congress lacks the power under the Commerce Clause to legislate as to violent crime which traditionally is the province of the states under their police power.

---

of homegrown wheat. These examples are by no means exhaustive, but the pattern is clear. Where economic activity substantially affects interstate commerce, legislation regulating that activity will be sustained." *Lopez,* 514 U.S., at 559-60 (internal citations omitted).

[4] The findings quoted by the Court are: "by deterring potential victims from traveling interstate, from engaging in employment in interstate business, and from transacting with business, and in places involved in interstate commerce; . . . by diminishing national productivity, increasing medical and other costs, and decreasing the supply of and the demand for interstate products."

### E.  Applying These Principles to the Instant Case

The Hobbs Act by its own terms seeks to cover all forms of commerce within the power of Congress to regulate under the Commerce Clause.  Using the three categories of commerce described in *Lopez* and *Morrison,* no one can reasonably question the power of Congress to criminalize robberies of the first two categories: the channels and instrumentalities of interstate commerce.  No one questions the power of Congress to regulate through criminal law acts such as hijacking interstate shipments of goods or similar violent crime against instrumentalities of interstate commerce.  The issue before the Court is whether Congress under its Commerce Clause powers can criminalize ordinary, plain vanilla robberies of retail stores.

Defendant asserts it cannot.

### 1.  Robberies of Retail Stores

Defendant is charged with conspiracy to rob a Metro PCS cell phone store located at 10508 Airline Drive, Houston, Texas.  At that point, Airline Drive is some distance east of Intestate 45 North and has no direct connecting street to IH-45.  Even a cursory view of Google Maps shows it is a retail area with, among other stores, a used auto parts store, a martial arts school, a nail salon and a volunteer fire station.

Metro PCS is a subsidiary of T-Mobile engaged in the retail sale of cell phones and cell phone service to individuals.  Given its location, it likely would be unusual for a person residing in another state or country to visit the store to make a purchase.  The area clearly is not a retail tourist attraction like the Galleria or the Mall of the

11

Americas which attracts customers from other states or nations.

While its products may have at one time moved in interstate or international commerce, it is a retail store serving customers from the surrounding area.

### 2. Ordinary Armed Robberies Do *Not* Come Within the Third *Lopez* Category

The states have always had the authority to punish ordinary crimes ranging from sexual assault and murder to robbery and theft. Clearly, theft and robbery have an effect on the victim's ability to engage in commerce, both intrastate and interstate commerce. A victim of a theft or a robbery has less money and fewer resources to buy cars made in Detroit or Japan. He has fewer resources to engage in any type of commercial activity.

In the aggregate, thefts and robberies may have a significant effect on interstate commerce to the extent that they take money and resources from their owners and put them in the control of others. Taking a larger view, a person who takes a can of spray paint and puts graffiti on the side of a building has a similar effect on interstate commerce by diverting assets used to clean the graffiti from one use and putting them to use in the clean up. Yet, the Commerce Clause does not vest Congress with the power to regulate and criminalize this type of street crime even if in the aggregate it has an effect on interstate commerce. That is the business of the State of Texas.

As Judge Garwood wrote for the dissenting judges in *McFarland,*

> We turn to *Lopez and Morrison* for guidance, concluding that their relevance is not confined to cases where the statute lacks a

12

>jurisdictional element. Moreover, we conclude that the Hobbs Act's here relevant proscription of *any* robbery that "in any way or degree . . . affects commerce" does not constitute a regulation of commercial activity, notwithstanding that all robberies have *some* economic effect, and hence is within the scope of *Lopez* and *Morrison*. We further conclude that the instant robberies fall within *Lopez* category three, and for that reason they are within the Commerce Clause power only if they "substantially" affect interstate commerce. Individually considered, it is clear that none of them do. Nor is there any rational basis to for that purpose aggregate their respective effects on interstate commerce with the effect on interstate commerce of all the undifferentiated mass of robberies covered by the Hobbs Act's here relevant general proscription of any and all robberies which "in any way or degree . . . affect commerce." To allow such aggregation in *Lopez* category three cases would, without adequate justification, bring within the scope of the Commerce Clause the proscription of local violent (and other) crimes not constituting the regulation of commercial activity, crimes prototypical of those that historically have been within the reserved police power of the states, contrary to the principle that the Commerce Clause is limited to matters that are truly national rather than truly local.

311 F.3d, at 409-10.

### F. Conclusion

The dissenters in *McFarland* and *Hickman* got it right. Congress did not intend the Hobbs Act to cover ordinary robberies that were the traditional business of the states under their police powers. And even if Congress did intend the Hobbs Act to have that reach, it is outside the Commerce Clause power of Congress as set out in *Lopez* and *Morrison.*

Defendant understands that this Court is bound by current Fifth Circuit precedent and must overrule this motion. *United States v. Mills,* 122 F.3d 235 (5th Cir. 1997), *cert. denied,* 523 U.S. 1011 (1998). He is presenting this to preserve his

right to seek further review, either by the *en banc* Fifth Circuit by certiorari.

**WHEREFORE, PREMISES CONSIDERED,** Defendant prays that this Court dismiss the indictment against him.

> Respectfully submitted,
> Schneider & McKinney, P.C.
>
>
> /s/ Tom Moran
> Tom Moran
> Texas Bar No. 14422200
> 440 Louisiana, Suite 800
> Houston, Texas 77002
> (713) 951-9994
> Telecopier: (713) 224-6008
> E-mail: tom6294@aol.com
>
> Attorney for Defendant
> John Riley Stubblefield

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above document was served on all parties by filing it through the EFC system.

> /s/ Tom Moran
> Tom Moran